per curiam:
Los notarios están obligados a respetar la letra de la Ley Notarial de Puerto Rico, Ley Núm. 75 de 2 de julio de 1987 (4 L.P.R.A. see. 2001 et seq.). Ignorar sus preceptos conlleva violaciones legales y éticas que aca-rrean consecuencias, no solo en el ejercicio de la profesión, sino para los clientes que acudieron a ellos en busca de una solución.
I
Al Ledo. Daniel Muñoz Fernós se le admitió al ejercicio de la abogacía el 3 de marzo de 1989, y al de la notaría el 19 de marzo de 1993.
En el 2006, la Sra. Gloria Roche Negrón, la quejosa, contrató los servicios del licenciado Muñoz Fernós para que realizara un expediente de dominio sobre una propie-dad que informó haber recibido en herencia. Pagó $3,100 por ese servicio, que el abogado no prestó. En su lugar, el licenciado Muñoz Fernós confeccionó un contrato de com-praventa de esa propiedad en un documento privado.
La quejosa alega que fue el licenciado quien recomendó la compraventa, en vez de completar el expediente de do-minio, para no hacer mucho papeleo. Sin embargo, en su comparecencia, el licenciado Muñoz Fernós negó esa imputación. El letrado alega que fue la señora Roche Ne-grón quien, luego de contratarlo para hacer el expediente *682 de dominio, le informó que tenía un comprador y que pre-fería realizar una compraventa, pues el comprador, el Sr. César Sánchez Rosa, se encargaría de la inscripción de la propiedad.
En el contrato de compraventa, fechado el 15 de mayo de 2006, el comprador se comprometió a pagar $20,000 en cuatro plazos de $5,000 cada uno. Con ese propósito, otorgó un pagaré que también autenticó el licenciado Muñoz Fernós. En el contrato de compraventa se expresó en el párrafo Primero que la señora Roche Negrón era dueña en pleno dominio del inmueble, y en el párrafo Segundo, que lo adquirió en su totalidad por herencia de sus padres.
Sin embargo, la señora Roche Negrón no presentó, ni surge del expediente, que el abogado haya solicitado una declaratoria de herederos o alguna otra evidencia que la acreditara como la única heredera con derecho propietario sobre el inmueble. A pesar de ello, el licenciado Muñoz Fer-nós otorgó el contrato de compraventa en documento pri-vado, con número de afidávit 1288.
El comprador incumplió con el último pago de $5,000, que venció el 15 de enero de 2007. Exigió que se inscribiera el inmueble en el Registro de la Propiedad (Registro).
Cuando se comenzaron las gestiones para hacer el expe-diente de dominio, salió a relucir que, contrario a lo que la señora Roche Negrón había informado al abogado, esta no era la única heredera interesada en el inmueble. El licen-ciado Muñoz Fernós alega que, aunque la quejosa le indicó tener unos hermanos, estos no se oponían a que se inscri-biera el terreno a su nombre. Informó de una hermana que aceptaba donarle su parte y un hermano fallecido. Sin embargo, asegura que la señora Roche Negrón ocultó la exis-tencia de varios sobrinos por parte del hermano premuerto y de otro hermano que reclamaba participación en el inmueble. Del expediente tampoco surge que el licenciado Muñoz Fernós indagara al respecto.
*683 Trabada así la controversia, la señora Roche Negrón presentó una queja el 13 de abril de 2007. Alegó que sus intentos por comunicarse con el licenciado Muñoz Fernós para resolver el problema resultaron infructuosos porque no respondía a sus llamadas. El 17 de octubre de 2007 referimos la queja a la Oficina de Inspección de Notarías (ODIN), que rindió un informe el 7 de octubre de 2008.
El informe de ODIN concluyó que el licenciado Muñoz Fernós violó los Arts. 2 y 56 de la Ley Notarial, supra, 4 L.RR.A. sees. 2002 y 2091, la Regla 68 del Reglamento Notarial, 4 L.P.R.A. Ap. XXIV, el Art. 1232 del Código Civil, 31 L.P.R.A. see. 3453, y lo que dispusimos en In re Molina Fragosa, 166 D.P.R. 567 (2005). Luego de la respuesta del licenciado Muñoz Fernós, el 7 de julio de 2009 referimos la queja ante la Oficina del Procurador General para que pre-sentara la querella correspondiente.
En la querella que se presentó el 5 de abril del 2010, el Procurador General concurrió con los señalamientos de ODIN. Además, señaló una violación a los Cánones 18, 24 y 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX. El querellado respondió que había hecho gestiones para com-pletar el expediente de dominio cuando la señora Roque Negrón pidió que se hiciera un contrato de compraventa. También alega que advirtió a las partes de las implicacio-nes del negocio jurídico que realizaban y las consecuencias de que el inmueble no estuviera inscrito en el Registro. El letrado señaló que la señora Roque Negrón omitió la exis-tencia de un hermano y los sobrinos, quienes se oponían a donarle su derecho propietario sobre el inmueble.
Designamos a la Leda. Jeannette Ramos Buonomo como comisionada especial para este caso. Luego de celebrar una vista, la Comisionada Especial rindió su informe el 21 de septiembre de 2011. Concluyó que el licenciado Muñoz Fer-nós violó los Cánones 18, 19 y 35 del Código de Ética Pro-fesional, 4 L.P.R.A. Ap. IX. Además, señaló que faltó al Art. *684 56 de la Ley Notarial, supra, y al Art. 1232 del Código Civil, supra.
La Comisionada Especial recomendó una suspensión del ejercicio de la notaría por un término no menor de no-venta días. Por las razones que exponemos a continuación, acogemos esta recomendación.
II
El notario está autorizado a dar fe y autenticar actos y los hechos extrajudiciales que frente a él se realicen, conforme a las leyes correspondientes, sin perjuicio de otras leyes especiales. Art. 2 de la Ley Notarial, supra.
El Art. 56 de la Ley Notarial, supra, especifica que un notario puede dar fe de un testimonio o una declaración de autenticidad de un documento no matriz, de su fecha y la legitimación de sus firmas, siempre que no se trate de uno de los documentos enumerados en el Art. 1232 del Código Civil, supra. Igual prohibición consta en la Regla 68 del Reglamento Notarial, supra.
En lo pertinente, el Art. 1232(1) del Código Civil, supra, enumera los contratos que deben figurar por escrito en documentos públicos. Entre estos se incluyen los actos y contratos que tengan por objeto la creación, transmisión, modificación o extinción de derechos reales sobre bienes inmuebles. Id. Por lo tanto, el notario público solo puede dar fe de la compraventa de un bien inmueble en un documento público, no en un documento privado.
En el caso ante nuestra consideración, el licenciado Mu-ñoz Fernós dio fe de la compraventa de un bien inmueble mediante un documento privado. Su actuación contravino la letra del Art. 1232 del Código Civil y del Art. 56 de la Ley Notarial, supra. Al violar estas disposiciones, contra-vino el citado Art. 2 de la Ley Notarial, que les exige a los notarios obedecer sus preceptos.
*685 III
El Canon 18 del Código de Ética Profesional, supra, señala que está entre los deberes del abogado defender los intereses del cliente diligentemente, desplegando en cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable.
En In re Rodríguez Báez, 129 D.P.R. 819, 823 (1992), señalamos que
... por el carácter público de su función, los notarios tienen que ser sumamente cautelosos en el ejercicio de su práctica, teniendo en todo momento presente las consecuencias nefas-tas que sobre los negocios jurídicos podría tener su negligencia.
Cuando un notario contraviene una ley, como la Ley Notarial, incurre en una práctica que, al mismo tiempo, constituye una violación del Canon 18 del Código de Ética Profesional, supra. In re Aponte Berdecía, 161 D.P.R. 94, 106 (2004).
Como vimos, el licenciado Muñoz Fernós incumplió con lo que establece la Ley Notarial de Puerto Rico en sus Arts. 2 y 56, supra, y además, con lo dispuesto en Regla 68 del Reglamento Notarial, supra. Al contravenir la letra de es-tas disposiciones legales, violó el citado Canon 18 del Có-digo de Ética Profesional. Incumplió con su deber de des-plegar adecuadamente su conocimiento legal y, por el contrario, su actuación menospreció las consecuencias ne-fastas que su actuación pudo tener sobre los demás here-deros con interés propietario sobre el inmueble en controversia.
Por otro lado, el Canon 19, supra, exige a los abogados mantener a su cliente siempre informado de todo asunto importante que surja en el desarrollo del caso que le ha sido encomendado. En In re Cardona Vázquez, 108 *686 D.P.R. 6, 9 (1978), señalamos que un abogado faltó a sus deberes éticos cuando no contestó las comunicaciones de su cliente, quien inquiría sobre las gestiones inconclusas para inscribir unas propiedades en el Registro de la Propiedad. Véanse, además: In re Plaud González, 181 D.P.R. 874 (2011); In re García Ortiz, 176 D.P.R. 123 (2009).
La señora Roche Negrón alegó en su querella que el licenciado Muñoz Fernós no contestó sus llamadas para inquirir sobre la gestión inconclusa de inscribir el terreno objeto de la controversia en el Registro. La Comisionada Especial señaló que durante la vista, el licenciado Muñoz Fernós admitió que no tuvo una comunicación efectiva con su dienta. Esa conducta constituye una violación al Canon 19 del Código de Etica Profesional, supra.
El Canon 24 del Código de Ética Profesional, supra, trata sobre la fijación de honorarios. Especifica que entre los elementos que se deben considerar para fijar el valor de los honorarios se incluyen el tiempo y trabajo requeridos, la dificultad de las cuestiones involucradas y la habilidad requerida para llevar el caso. El licenciado Muñoz Fernós cobró $3,100 para hacer un expediente de dominio que permitiera la inscripción del inmueble en el Registro. Sin embargo, el trabajo realizado consistió en redactar un contrato de compraventa en un documento privado. Evidentemente, lo que se cobró a la señora Roche Negrón no se facturó en consideración al trabajo que finalmente se realizó. Su conducta constituyó una violación del Canon 24.
Los abogados también están atados a un deber de sinceridad y honradez que se recoge en el Canon 35 del Código de Ética Profesional, supra. Ese deber le exige ajustarse a la sinceridad de los hechos, al examinar los testigos y al redactar un afidávit u otros documentos. Al discutir este canon en In re Montañez Miranda, 157 D.P.R. 275, 282 (2002), señalamos que no es necesario que el notario haya faltado a la verdad intencionalmente para faltar a la *687 fe pública y a los cánones del Código de Ética Profesional. “[E]s inmaterial si se obró de mala fe, deliberadamente o con la intención de engañar.” In re Nieves Nieves, 181 D.P.R. 25, 43 (2011).
Aunque la Ley Notarial dispone que los notarios no asumen responsabilidad por el contenido de los documentos privados cuyas firmas legitima, esa disposición no puede servir de sombrilla ante la negligencia o dejadez del notario en su desempeño profesional. In re Montañez Miranda, supra, págs. 282-283. Un notario no se puede pres-tar para legitimar un documento con el manto serio de la fe notarial si conoce de la falsedad de una de las expresiones en él contenidas o cuando tiene serias dudas sobre ellas, íd., pág. 283.
El licenciado Muñoz Fernós legitimó un afidávit de com-praventa de un bien inmueble en el que dio fe de que la señora Roche Negrón era “dueña en pleno dominio” de la propiedad objeto de la compraventa, que adquirió “en su totalidad por herencia de sus padres”, a pesar de que sabía de la existencia de otros hermanos que aún no habían ce-dido su interés hereditario. No surge que haya solicitado una declaratoria de herederos para percatarse de la vera-cidad de la información que proveyó la ahora quejosa. Así, habría conocido las dificultades para la inscripción en el Registro. Su omisión en solicitar una declaratoria de here-deros, o en realizar alguna otra gestión que confirmara la información provista, constituye una negligencia que vul-nera la letra del Canon 35 del Código de Ética Profesional, supra.
IV
En resumen, la conducta del licenciado Muñoz Fernós violó los Arts. 2 y 56 de la Ley Notarial de Puerto Rico, supra, la Regla 68 del Reglamento Notarial, supra, y el Art. 1232 del Código Civil, supra. En cuanto a los cánones *688 de ética de la profesión, incumplió con los Cánones 18, 19, 24 y 35.
Somos conscientes de que la querella que presentó la Procuradora General no incluyó un señalamiento especí-fico de violaciones de los Cánones 19 y 35 del Código de Ética Profesional, supra. Sin embargo, sí figuraron entre las conclusiones y recomendaciones de la Comisionada Especial designada.
Conforme a In re Pérez Riveiro, 180 D.P.R. 193 (2010), la práctica de añadir cargos que no se incluyeron en la que-rella original a base de la prueba que se presenta durante el procedimiento viola el debido proceso de ley del abogado querellado. Sin embargo, también hemos señalado que, cuando una conducta adicional surge durante el proceso, y se le ha salvaguardado al querellado el debido proceso de ley, se podrá atender en el mismo procedimiento. In re Martínez Almodóvar, 180 D.P.R. 805, 825-826 (2011).
En el presente caso, durante el procedimiento no se le imputó una conducta adicional. Se trata de los mismos he-chos, la misma conducta que se le imputó desde el princi-pio en la queja que presentó la señora Roche Negrón. Lo que cambió durante el proceso fueron los cánones según los cuales se censura esa conducta. El licenciado Muñoz Fer-nós tuvo oportunidad durante el proceso para defenderse de las actuaciones que se le imputaban y la aprovechó cabalmente. Procede entonces que adoptemos las violacio-nes de los citados Cánones 19 y 35, aunque no se hayan enumerado específicamente en la querella.
Por otro lado, al tomar una sanción disciplinaria consideramos ciertos elementos que pudieran servir como atenuantes o agravantes. Por ejemplo, la reputación del abogado, su historial profesional previo, si se trata de su primer procedimiento disciplinario, si ha aceptado los car-gos imputados, su arrepentimiento, si es una conducta aislada, si actuó con ánimo de lucro y cualquier otra consideración. In re Martínez Almodóvar, supra.
*689 El licenciado Muñoz Fernós reconoció su falta y pidió disculpas por su actuación negligente. Además, para en-mendar su error, se comprometió a pagar al Ledo. José Guillermo González Hernández para que resolviera la si-tuación a satisfacción de la quejosa. Ese gesto tiene mucho peso en la sanción que hoy adoptamos. Sin embargo, tam-bién lo tiene el hecho de que ya habíamos amonestado al licenciado Muñoz Fernós en otra ocasión. Véase In re Muñoz, Morell, 182 D.P.R. 738 (2011). Esto nos lleva a acoger la recomendación de la Comisionada Especial e imponer al licenciado Muñoz Fernós una suspensión de noventa días de la práctica de la notaría.
V
Por las razones antes expuestas, se suspende al Ledo. Daniel Muñoz Fernós del ejercicio de la notaría por un tér-mino de 90 días. El Alguacil de este Tribunal deberá incau-tar la obra y el sello notarial del Ledo. Daniel Muñoz Fer-nós y entregarlos a la Directora de ODIN. Además, ordenamos a ODIN dar seguimiento a los servicios que preste el Ledo. José Guillermo González Hernández dirigi-dos a resolver la controversia sobre el inmueble y nos in-forme si no hay progreso en un tiempo razonable.

Se dictará la sentencia de conformidad.